No. 65,120

In the Matter of CARL S. BLACK, *Respondent.*

(801 P.2d 1319)

Opinion filed December 7, 1990.

*Stanton A. Hazlett,* deputy disciplinary administrator, argued the cause, and *Bruce E. Miller,* disciplinary administrator, was with him on the formal complaint for the petitioner.

*Carl S. Black* appeared pro se.

*Per Curiam:* This is an original proceeding in discipline filed by the disciplinary administrator against Carl S. Black, of Shawnee Mission, an attorney admitted to the practice of law in Kansas.

A formal hearing before the panel of the Board for Discipline of Attorneys was held on May 16, 1989, in the Harold R. Fatzer Courtroom of the Kansas Judicial Center, Topeka. Respondent appeared in person and proceeded pro se.

Each of the two counts arose from respondent's handling of bankruptcy matters. No exceptions have been filed to the panel's findings of fact or conclusions. The panel's findings of fact (with reference to exhibits deleted) are as follows:

COUNT I

"2. The respondent represented debtors Robert and Mabel Rhoades in a Chapter 11 bankruptcy filing before Judge Pusateri's Bankruptcy Court in Topeka, Case No. 86-40921. Because debtors had failed to obey certain court orders, that case was dismissed by Judge Pusateri on August 4, 1987. The respondent's signature appears on the bottom of page 2 of that order.

"3. Substantially less than 180 days after August 4, 1987, the respondent filed a Chapter 13 Wage Earner Plan in Judge Pusateri's Bankruptcy Court in Topeka, Kansas, on behalf of debtors Robert and Mabel Rhoades. The provisions of 11 U.S.C. § 109(g) prohibit a second filing under Title 11 of the United States Bankruptcy Act if the first filing was dismissed because of debtor's willful failure to follow court order. For that reason, debtors' second filing, the Chapter 13 Wage Earner Plan, was dismissed on January 26, 1988. Also on that date Judge Pusateri advised the respondent that the Court would consider imposition of sanctions pursuant to Bankruptcy Rule 9011 against the debtors and/or their counsel. The respondent asked the Bankruptcy Judge to reconsider his order of dismissal.

"4. On February 15, 1988, a hearing was held before Judge Pusateri in the United States Bankruptcy Court for the District of Kansas. Debtors

Robert and Mabel Rhoades appeared. The respondent appeared. The debtors, speaking through the respondent, argued that since the Order of Dismissal of the original Chapter 11 proceeding dated August 4, 1987, did not specifically find that the debtors' failure to obey court orders was a 'willful' failure, § 109(g) of Title 11 was inapplicable. Alternatively, the respondent argued that if the second Chapter 13 filing was inappropriate, then the Bankruptcy Court lacked jurisdiction and could not impose sanctions. The Court found both contentions to be spurious. Accordingly, the Court denied the debtors' motion for reconsideration of the dismissal of the Chapter 13 proceedings. The Court further imposed sanctions against the respondent by ordering him personally to pay the reasonable fees and expenses of two creditors which were forced to participate in the second Chapter 13 proceeding, i.e., the Federal Land Bank and the Miami County National Bank. The respondent was ordered to pay the Federal Land Bank $784.75. The respondent was ordered to pay the Miami County National Bank $1,081.60. These sanctions were ordered paid within thirty days of the date of the order, February 15, 1988. A copy of this order was mailed to the respondent at the same registration address he maintains with the Clerk of the Appellate Courts.

"5. The respondent did appeal the Court's order of February 15, 1988. However, the respondent did not post a supersedeas bond, nor did he obtain a stay pending appeal.

"6. The respondent failed to pay the sanctions ordered by Judge Pusateri within the time allotted. On August 1, 1988, the respondent told Judge Pusateri that he had begun to place $50.00 a month in his client trust fund for payment of the sanction. At that time the respondent was ordered by Judge Pusateri to immediately transfer the $50.00 he had placed in his trust account to the Clerk of the Bankruptcy Court. The respondent was ordered to pay an additional $50.00 per month beginning in August, 1988. The respondent failed to transfer the $50.00 he claimed to have held in his trust account to the Clerk of the Bankruptcy Court. The respondent failed to make any additional monthly payments to the Clerk of the Bankruptcy Court in accordance with Judge Pusateri's order.

"7. On September 22, 1988, Judge Pusateri issued an Order directing the respondent to appear and show cause at 9:00 o'clock a.m. on October 11, 1988, at the United States Bankruptcy Court for the District of Kansas, Room 492, Frank C. Carlson Federal Building, Topeka, Kansas, why he should not be barred from practicing before the Bankruptcy Court for his failure to obey court order.

"8. The respondent failed to appear at the October 11, 1988, hearing. On October 18, 1988, an order barring the respondent, Carl S. Black, from practicing law before the United States Bankruptcy Court for the District of Kansas sitting at Topeka was entered.

"9. The respondent admitted during testimony that he received [the October 18, 1988, order] from Judge Pusateri but that he did not appear at the October 11, 1988, hearing because he 'panicked.'

## COUNT II

"10. On January 14, 1987, debtors Archie and Catherine Gregg filed their voluntary petition under Chapter 12 of the Bankruptcy Act. The respondent was their attorney. That same day a preliminary plan of reorganization was filed on their behalf. Thereafter, proceedings occurred in this farm bankruptcy in a rather routine manner until August 19, 1988.

"11. On August 19, 1988, the Standing Trustee, Edward J. Nazar, filed a motion requesting the Bankruptcy Court to dismiss the Chapter 12 case filed by the debtors Gregg because of debtors' failure to modify their plan. In support of that motion, the Trustee alleged that he had been made aware that the Federal Deposit Insurance Corporation (FDIC) was a creditor, that the Trustee had requested the debtors to file an amended plan or to file motions to modify their plan to include the FDIC, and to that date they had not done so. Accordingly, the Trustee requested the Court to dismiss the debtors' bankruptcy action unless the debtors affirmatively modified the plan to make provisions for the FDIC. A copy of that motion [was] mailed to the respondent at the same address shown as his last registration address with the Clerk of the Appellate Courts. A copy was also sent to the debtors Gregg. That motion was scheduled for hearing on September 22, 1988, at 9:00 o'clock a.m.

"12. The respondent did not appear at the hearing on the Trustee's motion which occurred at 9:00 o'clock a.m. on September 22, 1988. The Court ordered that the motion would be sustained unless the appropriate modifications were made within ten days from the date of the order. The debtors did appear in person and told the Court and the Trustee that they had made several attempts to make contact with the respondent to no avail.

"13. Thereafter, the Greggs secured the services of Darcy D. Williamson to represent them in their Chapter 12 bankruptcy proceedings. The Greggs terminated the services of the respondent by sending a letter. The Greggs also requested copies of their files. On September 30, 1988, Archie Gregg went to the offices of the respondent and requested his files. They were not given to him. Ms. Williamson spoke with the respondent afterwards and requested the Greggs' files so she could begin working on their case. The respondent did not send the files to her. Ms. Williamson then secured copies of the Court file, made appropriate changes and modifications to the reorganization plan in the Greggs' Chapter 12 case and it proceeded without further incident.

"14. The respondent testified that he graduated from Knox College in Illinois in 1970. He went into the Army until 1975 when he left pursuant to a reduction in force. He is now a reserve officer. He has received a masters in business from the University of Kansas and his law degree from Washburn University in 1980. He is presently serving as a commander in the reserve center in Kansas City.

"15. The respondent primarily limits his practice to juvenile matters. The remainder of his cases are concentrated in criminal law and bankruptcy. He

has a current case load of approximately 300 cases. He testified that he spends approximately four hours per day in court.

"16. The respondent testified that he was unaware that the Greggs were trying to contact him. He asserted that he had a defective telephone answering machine. He asserted that he has had difficulty in receiving his mail because of the change of office address. He testified that his office is at Johnson Drive and Shawnee Mission Parkway in Shawnee Mission, Kansas. He testified that the street name was changed to Shawnee Mission Parkway. For that reason, he asserts that he has had difficulty when mail has been incorrectly addressed.

"17. The respondent testified that he works in an office suite with other lawyers, sharing a receptionist and other office personnel. He is unsatisfied with this arrangement. He has had difficulty with the receptionist. He testified he does not always receive messages.

"18. The respondent testified that he received five separate phone messages from Mr. Gregg and tried unsuccessfully to contact him. He testified that he did receive the motion from the Trustee, Edward J. Nazar, but that he did not receive the notice of hearing on that motion which was separately sent out by the Clerk of the Bankruptcy Court. He testified that he spoke with Mr. Nazar by telephone and assumed the matter would be taken care of.

"19. The respondent testified that he has 'a lot of personal problems.' He indicated he had problems with his sons. He testified that he has a great juvenile case load which he cannot manage properly. He testified that he is the trustee for certain of his nieces and nephews [who] were to be committed which caused great strain and personal anguish. He further testified that he was experiencing great financial problems.

"20. The respondent testified that he is attempting to make changes in his life and office practice which will alleviate some of the problems he has been experiencing. For example, he has tried to work with the post office to correct the address problems he has been experiencing. He has reduced the number of Chapter 11 and Chapter 12 bankruptcy cases that he has been undertaking. Finally, he is seeking counseling for his passive/aggressive personality. He testified he is continuing to see a therapist regarding this. Moreover, he is continuing to see his sons' therapist in conjunction with his own therapy.

"21. The respondent finally testified that his present office address is Suite 100, 4210 Shawnee Mission Parkway, Shawnee Mission, Kansas 66205."

The Board panel made conclusions and recommendations as follows:

<u>"Conclusions</u>

"The panel unanimously concludes on clear and convincing evidence that:

"1. The respondent has violated Disciplinary Rules 1-102(A)(5) and (6) [1990 Kan. Ct. R. Annot. 165], 7-101(A)(1) [1990 Kan. Ct. R. Annot. 193], 7-102(A)(2) [1990 Kan. Ct. R. Annot. 193] and Model Rules of Professional

Conduct 8.4(d) and (g) [1990 Kan. Ct. R. Annot. 290] and 3.1 [1990 Kan. Ct. R. Annot. 257] regarding the allegations concerning the Rhoades Bankruptcy Matter.

"2. The respondent has violated Model Rules of Professional Conduct 1.1 [1990 Kan. Ct. R. Annot. 216], 1.3 [1990 Kan. Ct. R. Annot. 219] and 1.4 [1990 Kan. Ct. R. Annot. 220] regarding the Gregg Bankruptcy Matter."

The panel recommended that respondent receive an informal admonition from the disciplinary administrator and be placed on probation for a period of one year subject to certain conditions.

We find there is clear and convincing evidence establishing the violations found and enumerated by the panel as to each of the two counts.

We are very concerned with respondent's conduct with his clients and towards Judge Pusateri. Respondent's conduct herein is not a brief lapse of professional responsibility. For over a year he ignored court rules and orders and compelled Judge Pusateri, ultimately, to bar him from practicing law in his court.

The panel accepted Mr. Black's testimony that he is receiving therapy for his psychiatric problems and is seeking to alleviate his family, financial, and office management problems. We certainly hope he can get his life in order. Unfortunately, there is nothing before us to indicate what progress, if any, he has made in resolving his many problems. Only the passage of time will reveal how sincere respondent's efforts for improvement are and how successful the result will be.

IT IS THE ORDER OF THE COURT that the imposition of discipline against Mr. Black be and is hereby suspended for one year or further order of the court (whichever occurs first), and he is placed on probation in the interim period subject to the following conditions:

1. That respondent continue with his present psychotherapy program. Any change therein to be subject to the approval of the disciplinary administrator.

2. That respondent cooperate fully with the disciplinary administrator in all respects including, but not limited to, the setting up of a procedure with respondent's therapist whereby the disciplinary administrator can monitor whether or not respondent is actively following through on the treatment program.

3. That respondent pay the sanctions imposed upon him by Judge Pusateri.

4. That there be no further violations of the Disciplinary Rules, the Model Rules of Professional Conduct, or any law by the respondent during this period of probation.

IT IS FURTHER ORDERED that, in the event respondent fails to abide by the conditions set out herein, a show cause order may issue to the respondent and this court shall take whatever disciplinary action it deems just and proper without further formal proceedings.

IT IS FURTHER ORDERED that this order be published in the Kansas Reports, and that respondent pay the costs of these proceedings.