No. 78,616

In the Matter of CARL S. BLACK, *Respondent*.
(941 P.2d 1380)

Opinion filed July 11, 1997.

*Frank D. Diehl*, deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

Respondent did not appear in person or by counsel.

*Per Curiam*: This is an original proceeding in discipline filed by the office of the Disciplinary Administrator against Carl S. Black, of Shawnee Mission, an attorney admitted to the practice of law in Kansas.

The complaint filed alleged that the respondent violated MRPC 1.1 (1996 Kan. Ct. R. Annot. 257) (competence), MRPC 3.3 (1996 Kan. Ct. R. Annot. 321) (candor toward the tribunal), MRPC 3.5 (1996 Kan. Ct. R. Annot. 326) (impartiality and decorum of the tribunal), MRPC 4.4 (1996 Kan. Ct. R. Annot. 335) (respect for rights of third persons), MRPC 8.4 (1996 Kan. Ct. Annot. 350) (misconduct), MRPC 8.4(c) (1996 Kan. Ct. R. Annot. 350) (engage in conduct involving dishonesty, fraud, deceit, or misrepresentation); MRPC 8.4(d) (1996 Kan. Ct. R. Annot. 350) (engage in conduct that is prejudicial to the administration of justice); MRPC 8.4(g) (1996 Kan. Ct. R. Annot. 350) (engage in any other conduct that adversely reflects on the lawyer's fitness to practice law), Supreme Court Rule 207 (1996 Kan. Ct. Annot. 205) (duties of the bar and judiciary), and Supreme Court Rule 211 (1996 Kan. Ct. Annot. 215) (formal hearings).

A hearing was held before a panel of the Kansas Board for Discipline of Attorneys. The respondent did not appear in person or by counsel. The Disciplinary Administrator appeared by and through Frank D. Diehl, Deputy Disciplinary Administrator. Based upon clear and convincing evidence, a unanimous panel made the following findings of facts and conclusions of law:

## Findings of Fact

"1. The Respondent is an attorney at law, Kansas Registration No. 10673, with a last registration address filed with the Clerk of the Appellate Courts of 4210 Shawnee Mission Parkway, #16, Shawnee Mission, Kansas 66205, Phone 913-432-7078.

"2. Patricia Williams is the complainant in this case. She observed Respondent's conduct during custody and child support hearings concerning her husband's, Claude Williams, two children by his first marriage. Respondent was counsel to Claude Williams' first wife, Kimberly Williams.

"3. Patricia Williams complained to the Disciplinary Administrator's office after $783.64 per month for child support began to be deducted from her husband's paycheck before Claude Williams had been given notice of entry of the support order.

"4. Claude and Kimberly were divorced in approximately 1986, and on about August 11, 1993, the custody of the two minor boys born of that marriage was awarded to Claude Williams. Since the divorce, Claude has married Patricia, and three boys were born of that marriage. In November, 1993, petitions were filed in Wyandotte County District Court seeking to have the two children born to Claude and Kimberly declared in need of care, and custody of the children was given to SRS. Claude Williams was represented by Michael Haight, and Kimberly Williams by Respondent, Carl Black. In February, 1994, while SRS had legal custody, the children were physically placed with their mother, and the juvenile case was designated to be administered as informal supervision services.

"5. On November 14, 1994, Patricia and Claude Williams attended a pre-trial hearing in the juvenile proceedings at the SRS building in Wyandotte County, Kansas. Mr. Williams was present dressed in his military uniform and represented by Mr. Haight. Kimberly Williams was present and represented by the Respondent. Those present included Ruth May and Anita Clark from SRS and Mr. Williams' psychologist, Captain Pirro from Fort Leavenworth. According to Mr. Williams, Mr. Black said something which caused Mr. Williams to roll his eyes. Mr. Black, in anger, told Mr. Williams he should not be wearing his uniform, that Mr. Williams was a disgrace to the Kansas Army National Guard and to the United States Army, and that Mr. Black, if he had on his uniform, would have an eagle on his shoulders and he could put Mr. Williams at attention such that Mr. Williams could not speak. Patricia Williams and Mr. Haight corroborate this report. Mr. Black, during interviews with an investigator from the ethics and grievance committee in Wyandotte County, did not dispute the occurrence.

"6. Respondent, Carl Black, counsel for Kimberly Williams, pursued obtaining a child support order. On a date not provided by the record, but probably before the outburst in November, he filed a Motion to Compel Child Support in the juvenile proceedings, even though the proceedings were on an informal status, SRS did not participate in the motion, and a domestic relation action was also pending in the Wyandotte County District Court.

"7. Mr. Haight prepared the Father's Child Support Worksheet which was captioned in the juvenile proceedings, included typewritten financial data for the father, and bore the signature of Mr. Haight in the 'prepared by' block. The worksheet shows five children. Mr. Haight faxed the worksheet to Mr. Black, and spoke to him about it, reminding Mr. Black that Mr. Williams had a total of five children and asked to see the mother's numbers before the worksheet was submitted to the court. Mr. Haight did not hear from Mr. Black about completion of the worksheet.

"8. Mr. Black completed the worksheet by the addition of the handwritten numbers. The amount of child support was calculated as if Mr. Williams had only the two children, such that the basic child support obligation was $918.00 rather than $626.00. As a result, the child support was overstated. Mr. Black did not consult with Mr. Haight regarding the calculations and did not provide him with copies of the proposed child support order.

"9. On December 9, 1994, Mr. Black appeared before Judge Groneman in the juvenile proceedings ex parte. The judge signed a Journal Entry of Child Support which incorporated Mr. Black's calculations. Judge Groneman, by affidavit, states at the time he understood that the completed worksheet and orders had been presented to Mr. Haight by Mr. Black and Mr. Haight had adequate time to object but had not done so. This understanding was false. Mr. Haight had not received the calculations or the proposed orders, and Respondent does not even contend that he attempted to send the proposed orders to Mr. Haight. On page 1 of the order it recites that Kimberly Williams appears by her attorney, Carl Black. It also recites that Claude Williams and his attorney, Michael Haight, appeared. This statement is false. Neither Mr. Williams nor his counsel had notice or appeared. The last page bears the signature of Mr. Black as 'attorney for the parent.' Because the order directs the father to pay support, Mr. Black signed this document as attorney for Mr. Williams. The signature constitutes a misrepresentation. On the same date, Mr. Black also obtained Judge Groneman's signature on an Income Withholding Order, in which the 'prepared by' block was signed by Mr. Black as 'attorney for mother.' The Certificate of Mailing and Sheriff's Return on the Income Withholding Order were not completed.

"10. Mr. Haight was not notified of the orders. Mr. Williams knew nothing about the orders until money was withheld from his wages. The amount of the withholding was such that it resulted in a statement of 'No pay due.' When Mr. Williams was provided no pay from his employer, his family faced a financial crisis. He borrowed money to support his family.

"11. Subsequently, Mr. Haight initiated proceedings to reduce the child support to the proper amount. Mr. Williams incurred attorney's fees of $250 for this representation. The overpayments made prior to correction of the amount have been used to satisfy the support obligations of Claude Williams.

"12. On December 7, 1990 respondent Black was disciplined by the Kansas Supreme Court as reported in *In re Black (Black I)*, 247 Kan. 664, 801 P.2d 1319 (1990). Violation of Disciplinary Rules 1-102(A)(5) [engage in conduct prejudicial

to the administration of justice] and (A)(6) [engage in any other conduct that adversely reflects on his fitness to practice law], 7-102 (A)(2) [knowingly advance a claim or defense that was unwarranted under existing law] and Model Rules of Professional Conduct 1.1 [competence], 1.4 [communication], 8.4(d) [engage in conduct that was prejudicial to the administration of justice] and 8.4(g) [engage in any other conduct that adversely reflects on the lawyer's fitness to practice law] were found. Respondent was suspended for one year or further order of the court (whichever occurred first), and placed on probation in the interim subject to four conditions relating to continuing of psychotherapy, cooperation with the Disciplinary Administrator, the payment of sanctions imposed by the Bankruptcy Court, and no further violations of the Disciplinary Rules and the Model Rules of Professional Conduct. The two complaints arose from bankruptcy matters.

"13. A complaint arising from representation of a client in a divorce proceeding was before the court in *In re Black*, 249 Kan. 211, 814 P.2d 447 (1991). Respondent was found to have violated MRPC 1.1 [competence], 1.3 [1996 Kan. Ct. R. Annot. 264] [diligence] and 1.4 [communication]. The court publicly censured Mr. Black and, in addition, ordered that Mr. Black continue to comply with the conditions of probation set out in *Black* I.

"14. By order filed on May 13, 1992, the court found it appropriate to discharge respondent from the probation.

"15. With respect to the complaint at issue here, respondent cooperated with the investigator from the Ethics and Grievance Committee of the Wyandotte County bar. However he was very irritated by the investigation, which he thought to be inappropriate. He was very angry and hostile towards Mr. Williams. He did not agree that he had violated any ethical rules.

"16. Mr. Black did not file an answer, did not respond to the notice of hearing served on him by the office of the Disciplinary Administrator, and did not appear at the hearing.

"17. The investigator also interviewed Judge Groneman. He indicated that he signed the *ex parte* order under the belief that Mr. Haight had been provided Mr. Black's worksheets and had not responded."

Based on the above findings, the panel arrived at the following conclusions of law:

"Respondent's conduct violates the [Model] Rules of Professional Conduct [MRPC] Sections 1.1 [competence], 3.3 [candor toward the tribunal], 3.5 [impartiality and decorum of the tribunal], 4.4 [respect for rights of third persons], 8.4 [misconduct], and [Supreme Court] Rules 207 [duties of the bar and judiciary] and 211 [formal hearings]. The Panel finds by clear and convincing evidence that Respondent violated [MRPC] 1.1 [competency] by improperly applying the child support guidelines when using the formula for two children rather than five children. Respondent has been practicing law for a sufficient time so that his failure to properly learn, observe and apply the rules for calculating child support dem-

onstrates a lack of competency in that part of his practice. Furthermore, Respondent's conduct in signing the father's worksheet as 'Attorney for Parent' also violates Section 1.1. It is contended that Respondent also violated [MRPC] 1.1 because he believed that the support guidelines were not the same for juvenile proceedings as in domestic proceedings. The Panel does not find clear and convincing evidence to support the contention that Respondent believed this to be true.

"The Panel also finds by clear and convincing evidence that Respondent violated [MRPC] 3.3(a)(1), which requires that a lawyer not knowingly make false statements to a tribunal. Respondent knowingly and with intent to affect the court's action made false statements in the orders submitted to the court. Clear and convincing evidence supports the Panel's finding of a violation of [MRPC] 3.3 which requires, in an *ex parte* proceeding, that the lawyer inform the court of all material facts known to the lawyer. Respondent participated in an *ex parte* [proceeding] without informing the judge that Mr. Haight had not been notified of the hearing, had not reviewed the proposed orders, and had not reviewed the child support calculations. Respondent also failed to inform the court that although Claude Williams had three additional children, the support calculations were based upon two children.

"Respondent's *ex parte* communications with Judge Groneman constitute a violation of [MRPC] 3.5(c). Respondent communicated regarding the merits with intent to affect the outcome of the matters of child support. The communications were not within the exception of [MRPC] 3.5(c)(1) because they were held other than in the course of official proceedings in the case. Respondent's conduct is not within the exception of [MRPC] 3.5(c)(2). Respondent provided writings to Judge Groneman but filed to promptly provide copies to Mr. Haight. Respondent communicated orally with Judge Groneman without notice to Mr. Haight, such that the exception of [MRPC] 3.5(c)(3) does not apply.

"Rule 4.4 prohibits a lawyer when representing a client from using 'means that have no substantial purpose other than to embarrass, delay, or burden a third person . . .' Respondent violated this rule by his angry outburst criticizing Mr. Williams for wearing the uniform of the United States Army. This served only to agitate and embarrass Mr. Williams, and delay and burden the child support hearing process.

"The Panel finds that Respondent violated [MRPC] 8.4(c) [engage in conduct involving dishonesty, fraud, deceit or misrepresentation], (d) [engage in conduct that is prejudicial to the administration of justice], and (g) [engage in any other conduct that adversely reflects on the lawyer's fitness to practice law]. Respondent's obtaining of the child support order based upon erroneous calculations and without notice to Mr. Haight constituted conduct involving dishonesty, fraud, deceit and misrepresentation. Respondent's unjustified, hostile and intimidating outburst addressed to Claude Williams constituted conduct that is prejudicial to the administration of justice and reflected adversely on his fitness to practice law.

"The Respondent's failure to answer and to appear at the hearing constitute violations of his duties under [Supreme Court] Rules 207 [duties of the bar and judiciary] and 211 [formal hearings]. The Panel finds this conduct particularly troublesome in light of the Respondent's history of participating in two prior disciplinary proceedings which resulted in the imposition of discipline."

The panel considered the following information in making its recommendations to this court:

"The Disciplinary Administrator has requested the Panel recommend to the Supreme Court that Respondent be disciplined by a one (1) year period of suspension from the practice of law and by being required to formally apologize to Mr. and Mrs. Williams and to reimburse them $250.00. That sum represents Mr. Haight's estimate of the added fees he charged the Williams for work attributable to Respondent's conduct set forth in the complaint. Mr. Diehl also recommends that Mr. Black be required to formally apologize to Mr. Williams.

"In making its recommendations for discipline, the Panel has reviewed the ABA Standards for Imposing Lawyer Sanctions. The factors to be considered include the following: (1) whether the lawyer has violated a duty owed to a client, to the public, to the legal system or to the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) the amount of the actual or potential injury caused by the lawyer's misconduct; and (4) the existence of aggravating or mitigating factors.

"The evidence shows that the Respondent violated duties to his client, to the public, and to the legal profession by his erroneous calculation of the child support, obtaining an *ex parte* child support order and withholding order based upon such calculation, and his unprofessional outburst directed to Mr. Williams. Mr. Black acted intentionally when obtaining *ex parte* orders from Judge Groneman and when ranting at Mr. Williams. Overstating the amount of child support and obtaining an *ex parte* order for withholding such amount seriously injured the family of Claude and Patricia Williams, making it difficult for them to take care of their family. Respondent's attack upon Claude Williams, in the presence of several people, caused severe anger and intimidation.

"There are multiple violations. The standards support disbarment for some intentional violation of [MRPC] 3.3(d) and 3.5(c) and less severe sanction for others. ([MRPC] 1.1 and 8.4). We therefore turn to the ABA Standards on Aggravation and Mitigation to determine whether any factors present either increase or reduce the nature and extent of discipline to be imposed.

"1. Aggravating factors.

a. Prior disciplinary offenses. Respondent has been disciplined for ethical violations in 1990 and 1991. (*In re Black*, 247 Kan. at 664 and *In re Black*, 249 Kan. at 211). He has a history of lack of competency and professional misconduct within the meaning of [MRPC ] 1.1 and 8.4.

b. Dishonest or selfish motive. This is not a factor.

c. Pattern of misconduct and d. Multiple offenses. Respondent definitely follows a pattern of misconduct as shown by his previous violations. He failed to appear before Judge Pusateri in response to an order to show cause why [he] should not be barred from practicing before the Bankruptcy Court. He failed to appear before the Panel in this proceeding. Respondent shows a pattern of lack of competency. Respondent's prior disciplinary actions and this proceeding all found multiple offenses.

e. Bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency. Respondent failed to file [an] Answer and failed to appear at hearing.

f. Submission of false evidence, false statements, or other deceptive practices during disciplinary process. This is not a factor.

g. Refusal to acknowledge wrongful nature of conduct. Respondent does not admit wrongdoing.

h. Vulnerability of the victim. The Panel does not find the complainant to be more or less vulnerable than any other clients.

i. Substantial experience in the practice of law. Respondent is a 1987 graduate and admittee to practice and has sufficient experience to have been attentive to each duty that he violated.

j. Indifference to making restitution. Respondent's indifference is highlighted by his failure to file an Answer and failure to appear at the hearing.

k. Illegal conduct, including that involving the use of controlled substances. This is not a factor.

"2. Mitigating factors.

a. Absence of a prior disciplinary record. Respondent has a prior disciplinary record.

b. Absence of a dishonest or selfish motive. This is not a factor.

c. Personal or emotional problems if such misfortunes have contributed to violation of the [Model Rules of Professional Conduct]. Although Respondent successfully presented such matters in mitigation of prior offenses, he did not present any such evidence in this case.

d. Timely good faith effort to make restitution or to rectify consequences of misconduct. This is not a factor.

e. The present and past attitude of the attorney as shown by his cooperation during the hearing and his full and free acknowledgement of the transgressions. This is not a factor.

f. Inexperience in the practice of law. This is not a factor.

g. Previous good character and reputation. This is not a factor in this decision.

h. Physical disability. This is not a factor in this decision.

i. Mental disability or chemical dependency including alcoholism or drug abuse when (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependence or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period

of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that conduct is unlikely. This is not a factor in this case.

j. Delay in disciplinary proceedings. This is not a factor.

k. Imposition of other penalties or sanctions. This is not a factor.

l. Remorse. This is not a factor.

m. Remoteness of prior offenses. This is not a factor.

n. Any statement by the complainant expressing satisfaction with restitution and requesting no discipline. This is not a factor.

"The Panel notes that there are several significant aggravating factors and no mitigating factors. After reviewing all of these factors, the Panel recommends that Respondent be indefinitely suspended. The Panel also recommends that Respondent be required to formally, in writing, apologize to Claude Williams and to reimburse Claude Williams $250.00."

The factual findings and conclusions of law of the panel are supported by clear and convincing evidence, and we adopt the same. We note that during oral argument the Deputy Disciplinary Administrator changed the Disciplinary Administrator's initial recommendation of a 1-year suspension to a recommendation for indefinite suspension. A majority of the court is in agreement with the recommendation of the panel that the respondent be indefinitely suspended from the practice of law in Kansas and that respondent apologize in writing to Claude Williams and reimburse Claude Williams $250, which he expended to change the order procured by respondent. A minority of the court would order disbarment.

It is Therefore Ordered that Carl S. Black be and he is hereby indefinitely suspended from the practice of law in the State of Kansas.

It Is Further Ordered that prior to reinstatement, respondent reimburse Claude Williams $250 and submit a written apology to Claude Williams for inappropriate comments referenced in the findings of fact.

It Is Further Ordered that respondent shall forthwith comply with Supreme Court Rule 218 (1996 Kan. Ct. R. Annot. 226), that respondent pay the costs of this action, and that this order be published in the official Kansas Reports.